UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRICKLAYERS PENSION TRUST FUND,
ET AL,

    Plaintiffs,                                     Case No. 05-72230

v.                                              Honorable Nancy G. Edmunds

QBC, INC OF MICHIGAN,

    Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

This matter came before the Court upon the Plaintiffs' and Defendant's Cross Motions for Summary Judgment.  Plaintiffs brought suit against Defendant, QBC, Inc., seeking ERISA fringe benefits owed in accordance with their collective bargaining agreement.  For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

**I.    Facts**

On October 1, 2001, Steve Laird, Present of QBC Inc., of Michigan ("QBC"), signed a collective bargaining agreement ("CBA") with the Bricklayers' and Masons' Union, Local No.1, Bricklayers and Allied Craftworkers International Union fo North America, AFL-CIO (the "Union").  The CBA stipulates that QBC pay fringe benefits to the Union with respect to work preformed by QBC's employees represented by the Union.

Plaintiffs allege that Defendant never made any of the requisite fringe benefit

payments. (Pl.'s Mot., 7). Defendant does not deny this allegation, but argues that it had no duty to pay the benefits, believing the CBA to be void under the doctrine of fraud in the execution. (Def.'s Mot., 16). Defendant alleges that Plaintiffs misrepresented the CBA as "a contract under which the Union would get masonry work fo QBC in exchange for QBC's signature..." *Id.*

Defendant also argues that it terminated the CBA on January 12, 2002 by sending a letter of termination to the Union and faxed it two days later. (Def.'s Mot., 10). On March 31, 2003, Defendant, upon being informed that the Union did not believe that the CBA had been terminated, hand-delivered a copy of a termination letter dated January 12, 2002. (Def.'s Mot., 11).

Plaintiffs assert that the Defendant did not properly terminate the CBA and that Plaintiffs did not receive the letter of termination until March 31, 2003. (Pl.'s Resp., 8). The CBA includes express language regarding termination requirements, including sending a letter through registered or certified mail. (Pl.'s Ex. B). Defendant believes that the letter of termination was sent by certified mail, but does not have a receipt. (Def.'s Ex. 1, 3).

**II.   Standard for Summary Judgment**

Summary judgment is granted where there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue exists "where the evidence presents a sufficient disagreement to require submission to a jury..." and does not exist where evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party bears the burden of showing that the non-moving party's case lacks

any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the non-moving party must oppose the motion by showing a genuine issue of material fact using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves..." *Id.* at 324.

**III.   Argument**

Plaintiffs argue that QBC was bound to the CBA for the period of October 1, 2001 through May 31, 2003, and that QBC did not make requisite fringe benefit contributions for that period.  Plaintiffs support their motion with the signed CBA, Defendant's admission to having signed the CBA, and Plaintiffs' auditor's affidavit stating the extent of Defendant's debt.     Defendant does not contend that it made contributions.  Rather, Defendant argues that it owes no contributions for two reasons.  First, Defendant alleges that the CBA is void *ab initio* due to fraud in the execution.  Alternatively, Defendant argues that the CBA was terminated in January, 2002, and seeks summary judgment against payments for the period following the alleged termination.

**A.  Was The CBA Void Ab Initio?**

Defendant first argues that Plaintiffs improperly obtained Defendant's consent to the CBA through fraud in the execution.  Defendant alleges that Plaintiffs presented the CBA as a deal in which "the Bricklayers' Union would get Madison Heights school masonry work and other masonry work for QBC if QBC would sign a collective bargaining agreement." (Def.'s Mot., 12).

Fraud in the execution is an affirmative defense and occurs when a plaintiff "causes a party to believe that the agreement it signs has essential terms different from those that actually appear in the contract." *Electrical Workers Local 58 Pension Trust Fund v. Gary's*

*Electric Service Company*, 227 F.3d 646, 656 (6th Cir. 2000). Black's Law Dictionary gives as an example a blind person signing a mortgage after being told it was a letter. BLACK'S LAW DICTIONARY 671 (7th ed. 1999). Fraud in the inducement, on the other hand, occurs where a party induces another to join a contract with misrepresentations which do not bear on the contract at all. *Id.*

Defendant acknowledges that it knew it was entering into a collective bargaining agreement. Essentially, Defendant is arguing that it was misled by Plaintiffs not about the nature of what it was signing, but rather about what the Union would do for it if it entered into the CBA. Defendant is in essence alleging fraud in the inducement, not fraud in the execution.

Plaintiffs correctly point out that fraud in the inducement is not a defense to an ERISA claim. "Employers may not assert traditional contract defenses 'such as fraud in the inducement . . . ' to avoid the clear terms of their agreements." *Trustees of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling,* 48 Fed.Appx. 188, 192 (6th Cir. 2002) (citing *Cent. States, S.E. & S. W. Areas Pension Funds v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir.1989). Employers are limited to asserting "(1) illegality of the original contract; (2) arguments that the contract was void at its inception (*e.g.*, by fraud in the execution); and (3) decertification of the union." *Plumbers & Pipefitters Local union No. 572 Health & Welfare Fund v. A&H Mech. Contractors, Inc.,* 100 Fed.Appx. 396, 402 (6th Cir. 2004). Defendant is therefore barred from asserting what is, in essence, a fraud in the inducement defense. The Court next addresses Defendant's termination argument.

**B.  Was the CBA Properly Terminated?**

Defendant argues that the CBA was terminated in January of 2002. Termination,

under the CBA, requires a written notice sent by certified or registered mail.  Defendant believes that it sent a termination letter by certified mail on January 12, 2002.  Defendant does not have a certified mail receipt, but has a copy of the letter.  Though the letter is dated January 12, 2002, there is no way to determine when it was written or sent.  While the date on the letter may be evidence of when it was written, it is not evidence that it was sent certified mail on that date, nor that it was ever received.

Defendant's only evidentiary support that it sent the letter by certified mail is an affidavit from Steven Laird, Defendant's president, stating "On January 12, 2002, I mailed a letter of termination, dated January 12, 2002, to the Bricklayers' Union.  It is my understanding and belief that I sent the termination letter by certified mail."  (Def.'s Ex. 1, 3).

Laird's use of the words "understanding" and "belief" raises the question as to whether the affidavit creates a genuine issue of material fact.  Fed. R. Civ. P. 56(e) requires an affidavit to be made on "personal knowledge."  Affidavits based on belief rather than personal knowledge, as required by Rule 56, are accorded less weight.  *Handley v. Center Companies, Inc.*, No. 85-1761, 1986 WL 18073, *1 (6th Cir. Oct. 30, 1986).  Laird's affidavit relies on understanding and belief, not personal knowledge, and therefore cannot support his claim that he terminated the CBA, in a manner required by the CBA, in January, 2002.

Accordingly, Plaintiffs have met their burden of showing that there are no issues of material fact and that they are entitled to judgment as a matter of law on the issue of liability.      **C. Damages**

Although Plaintiffs have established that Defendant owes unpaid contributions for the

time period of October 1, 2001 through May, 2003, it has conducted an audit only supporting damages for the time period of October 1, 2001 to October 1, 2002. As to the time period October 2, 2002 through May, 2003, an audit is yet to be conducted. Accordingly, summary judgment cannot be issued as to amounts owed as a result of unpaid contributions for that unaudited time period.

Plaintiffs seek $64,726.89 in unpaid fringe benefit contributions for the period from October 1, 2001 until October 1, 2002, prejudgment interest totaling $12,849.18, $5,654.06 in liquidated damages, and $4,135.50 in costs and attorney's fees. Plaintiffs' total claim is for $87,365.63. Plaintiffs support these claims with affidavits from it's auditor and attorneys.

As to Plaintiffs' claim for liquidated damages, the Court must first determine whether or not the liquidated damages are a penalty. If fringe benefit contributions remain unpaid at the time judgment is entered, Plaintiffs are entitled to liquidated damages on unpaid contributions as provided under the plan. *Mich. Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1991). Liquidated damages cannot exceed twenty percent of the unpaid contributions. 29 U.S.C. 1132(g)(2)(C)(ii). Plaintiffs liquidated damage claim fits this criteria.

ERISA allows reasonable attorney's fees. 29 U.S.C. 1132(g)(2)(D). In determining whether costs and attorney's fees are reasonable, Courts consider "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions

regarding ERISA; and (5) the relative merits of the parties' positions." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).  Plaintiffs' Exhibit G to their Motion for Summary Judgment provides a calculation of costs and attorney's fees.  (Pl.'s Ex. G).  The fees and costs are reasonable.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby GRANTS Plaintiffs' Motion for Summary Judgment on liability and a portion of damages and DENIES Defendant's Cross Motion for Summary Judgment.  Plaintiffs are awarded $87,365.63.

                              s/Nancy G. Edmunds  
                              Nancy G. Edmunds  
                              United States District Judge

Dated:  August 4, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2006, by electronic and/or ordinary mail.

                              s/Carol A. Hemeyer  
                              Case Manager